**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| SARAH KILGORE, | ) | CASE NO. 1:24-CV-1607 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL ARMSTRONG |
| v. | ) | |
| | ) | |
| REVLON CONSUMER PRODUCTS, LLC, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

## I.      INTRODUCTION

Plaintiff Sarah Kilgore ("Ms. Kilgore") alleges that she was injured after using a defective hair dye manufactured by Defendant Revlon Consumer Products, LLC. (Compl., ECF No. 1-1.) Ms. Kilgore also alleges that her six-year-old son, I.K., has experienced behavioral changes and other issues as a result of psychological trauma caused by Ms. Kilgore's injuries. (*Id.*) Revlon has denied these allegations and asserted affirmative defenses. (Answer, ECF No. 1-1.)

The parties have consented to a magistrate judge exercising jurisdiction over this case pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (ECF Nos. 4, 5; Non-document Order, Oct. 18, 2024.) Currently pending is Revlon's motion for summary judgment (ECF No. 34); the motion is ready for adjudication. For the following reasons, the Court GRANTS Revlon's motion for summary judgment. (ECF No. 34.)

## II.      PROCEDURAL HISTORY

### A.      The Complaint

On August 15, 2024, Ms. Kilgore filed a complaint against Revlon in the Richland County Court of Common Pleas, seemingly asserting causes of action under the Ohio Product Liability Act (the "Act"), Ohio Rev. Code § 2703.71, *et seq*. (ECF No. 1-1, PageID# 6–25.)

Specifically, Ms. Kilgore alleged that she used a burgundy hair dye—one manufactured by Revlon—on December 31, 2022, after which she felt irritation in her scalp. (*Id.*, PageID# 8.) The irritation went away after she rinsed out the dye. (*See id.*) At some time shortly thereafter, she used a black hair dye manufactured by Revlon. (*Id.*) The dye did not immediately cause irritation. (*Id.*) However, several days after applying the dye, her scalp began to itch "all over [her] head." (*Id.*) She decided not to wash her hair for several days during the week that included January 10, 2023. (*See id.*) She washed her hair on January 11, 2023. (*Id.*) On January 15, 2023, she awoke and noticed "a lesion with orangish-golden yellow pus and crust behind [her] left ear, and one crusty and scaly circle on [her] neck." (*Id.*) She applied an over-the-counter fungal cream to these areas, believing them to be the result of a fungal infection. (*See id.*)

Ms. Kilgore further alleged that she consulted with a nurse practitioner on January 23, 2023. (*Id.*) The nurse practitioner diagnosed a fungal infection and prescribed an antifungal medication. (*See id.*) On January 24, 2023, Ms. Kilgore conducted Internet research into antifungal remedies and then applied peroxide to the area; however, the peroxide "made the infection worse." (*Id.*, PageID# 9.) On January 25, 2023, Ms. Kilgore again consulted with a nurse practitioner because of the severity of the irritation. (*Id.*) The nurse practitioner diagnosed her with impetigo, a bacterial infection, and prescribed mupirocin. (*See id.*)

Ms. Kilgore alleged that the mupirocin made the infection worse and caused it to spread. (*Id.*) She returned to the nurse practitioner on January 30, 2023, and was diagnosed with "MASA," or a staph infection. (*Id.*) The nurse practitioner referred Ms. Kilgore to a dermatologist. (*Id.*) Before Ms. Kilgore was able to see the dermatologist, she went to a hospital, believing that she had sepsis. (*Id.*) She did not. (*Id.*, PageID# 13.)

Ms. Kilgore alleged that the dermatologist ultimately diagnosed her with dermatitis "from dyeing [her] hair." (*Id.*) The dermatologist prescribed her the "right medication," and her lesions healed after two weeks of using it. (*Id.*) Ms. Kilgore alleged that she visited an allergist in October 2023, and an allergy test "proved the dermatitis resulted from dyeing [her] hair[] and [she is] now allergic to hair dye." (*Id.*)

Ms. Kilgore did not specifically set forth causes of action in her complaint, but she identified several sections of the Act and—reading her complaint as a whole—she alleged that (1) the hair dye she used was defective in design or formulation (Ohio Rev. Code § 2307.75); (2) the dye was defective due to inadequate warning or instruction (Ohio Rev. Code § 2307.76); (3) the dye was defective because it did not conform, when it left the control of its manufacturer, to a representation made by that manufacturer (Ohio Rev. Code § 2307.77); and (4) Revlon, as the seller and manufacturer or designer of that product, is liable for the injuries and other damages traceable to her use of the defective dye. She further alleged that Revlon "accepted responsibility for expenses resulting from the incident, such as medical expenses" and "has taken responsibility for the negligence in selling a defective product." (*Id.*, PageID# 6–7.) She claimed that "[t]he product caused intentional injuries" to her. (*Id.*, PageID# 7.) She further claimed that her son suffered injuries resulting from her use of the product, including "emotional distress, pain and suffering, as well as loss of society, care, attention, companionship, and education." (*Id.*, PageID# 7.) She characterized her son's injury as "potentially permanent," "preventing him from performing [] life-sustaining activities[ like] eating and maintaining personal hygiene." (*Id.*)

Ms. Kilgore sought damages, seemingly in the amount of $100 billion. (*Id.*, PageID# 25.) She sought compensation for the physical injury to her scalp and the anxiety that resulted from that injury. (*Id.*) She alleged that she is "not the same person" after her infection (PageID# 11),

3

and she sought compensation for all the damages she is able to attribute to that change. Among other things, she sought damages for the disruption to and lack of enjoyment in her education, a business internship, professional project opportunities, and overall career trajectory that she said are attributable to the injury. (*Id.*; *see also* PageID# 9–12.) She claimed that she lost out on a job placement, tuition reimbursement, training, and education and mentorship opportunities as a result of the injury. (*See id.*, PageID# 11.) She alleged that her anxiety caused her to transfer into an education program that is more expensive, causing her to take out loans. (*Id.*)

Ms. Kilgore also sought damages attributable to injuries to her son. She claimed that her son developed anxiety and several psychological disorders as a result of her scalp injury and related treatment, and these disorders had disrupted his education and led her to take on a greater burden (financial and otherwise) in caring for him. (*See id.*, PageID# 7, 11–12.)

Ms. Kilgore included what she referred to as an "Initial Assessment" in her complaint. (*See id.*, PageID# 13–23.) This portion of the complaint seemingly purports to be a clinical assessment of I.K.'s psychological history and assessed diagnoses. (*See id.*) But it is unsigned. While written in the third person, Ms. Kilgore did not state in her complaint whether she prepared the document or whether she alleges it to be a medical record from a treating professional.

Ms. Kilgore also reportedly attached several pages of medical records to her complaint; Revlon did not include these copies when it removed the action to federal court, because they contained personal identifiers and presented other privacy concerns. (*See* Notice of Removal at 1, ECF No. 1.)[1]

---

[1] Later, Ms. Kilgore attached a version of her complaint to a motion for electronic filing privileges; this copy of the complaint contained an additional one-paragraph quotation, attributed to a psychologist, regarding I.K. (*See* ECF No. 6-1, PageID# 60–61.)

### B. The Answer

Revlon filed its answer on September 18, 2024. (Ans., ECF No. 1-1, PageID# 27.) It denied that its product was defective in any way, that it "accepted responsibility for expenses resulting from the incident," or that any action or inaction on its part proximately caused any harm to Ms. Kilgore. (*Id.*) It stated that it lacked knowledge or information sufficient to form a belief about the remaining allegations in the complaint. (*See id.*) It asserted a number of affirmative defenses, including—among other things—asserting that Ms. Kilgore was negligent and misused the dyes in contravention of usage instructions, that she assumed the risk of injury, and that her injuries were the result of third-party negligence or a superseding cause. (*See id.*, PageID# 28–31.)

### C. The Proceedings in Federal Court

On September 20, 2024, Revlon removed the action to this Court based on diversity jurisdiction and pursuant to 28 U.S.C. § 1441. (Notice of Removal, ECF No. 1.) On October 18, 2024, the case was transferred to this Court's docket pursuant to the consent of the parties. (Non-document order, Oct. 18, 2024; *see also* Consents, ECF Nos. 4, 6.)

The Court held a case management conference with the parties on December 2, 2024, and the Case Management Order was entered on December 3, 2025. (ECF No. 10).) The Case Management Order specifies that the deadline to amend the pleadings or to add parties was set at February 1, 2025. (ECF No. 10, PageID #84.) The fact discovery cut-off was set for September 20, 2025. (*Id.*) The initial expert report deadline was due July 15, 2025. (*Id.*) The rebuttal reports deadline was August 15, 2025. (*Id.*) The deadline for the completion of fact and expert discovery was September 20, 2025. (*Id.*)

The parties attempted alternative dispute resolution with Judge Calabrese and mediation with Magistrate Judge Sheperd between December 2024 and March 2025, but no resolution was reached. (*See* ECF Nos. 11, 12, 13, 14, 15, and related non-document entries.)

On August 15, 2025, Revlon filed an Initial Disclosure of Rebuttal Experts. (ECF No. 16.) That filing stated that Ms. Kilgore had not identified any expert or provided any expert report by the July 15, 2025 deadline established in the Case Management Order. (ECF No. 16, PageID# 99.) As a result, Revlon stated it had no rebuttal experts to identify because Plaintiff has provided nothing to rebut. (*Id.*)

The Court held a status conference on August 18, 2025. (Non-document Minutes, Aug. 18, 2025.) Based on that discussion, the Court extended the deadline for fact discovery to October 20, 2025 and the dispositive motion deadline to November 24, 2025. (*Id.*)  The minute order further provided that "all other case deadlines remain in effect." (*Id.*)

On August 22, 2025, Ms. Kilgore filed a motion for joinder, seeking to join I.K. as a plaintiff. (ECF No. 17.) Revlon opposed the motion. (ECF No. 18.) On October 1, 2025, Ms. Kilgore filed a motion to extend the discovery cutoff until January 9, 2026. (ECF No. 19.) On October 3, 6, and 16, 2025, Ms. Kilgore filed witness lists, identifying herself, her mother, multiple medical professionals and medical centers, and a fitness center. (ECF No. 20, 22, 28.) On October 6, 2025, Ms. Kilgore filed another motion for joinder and another motion to extend the discovery cutoff, both of which raise the same arguments and seek the same relief as her original motions. (ECF Nos. 21, 23.)

On October 7, 2025, the Court issued an order denying Ms. Kilgore's motions for joinder (ECF Nos. 17, 21) and Plaintiff's motions for the extension of the discovery cut-off (ECF Nos. 19, 23). (Order, ECF No. 24.) In relevant part, the Court noted in the order that:

6

> [I]t does not appear that [Plaintiff] has made meaningful attempts to conduct discovery to this point. In its opposition to Plaintiff's motion for joinder, Revlon states that Plaintiff has not served any document requests or interrogatories and has not noticed any depositions. Plaintiff does not dispute Revlon's assertion.

(*Id.*, PageID# 133.)

On October 15, 2025, Ms. Kilgore filed a document styled as a "Discovery Brief," which restated and further described the allegations in her complaint and discussed the strengths of her case and her "concerns related to resolution." (ECF No. 25.) Ms. Kilgore stated that "the defendant has failed to comply with discovery meetings without the assistance of the court." (*Id.*, PageID# 142.) She said she had requested emails from Revlon in October 2024. (*Id.*, PageID# 141.) She insisted that there was evidence "proving the injury is a direct result of the defective product." (*Id.*, PageID# 140.) She suggested that testimony from her dermatologist and nurse practitioner would support her claims. (*See id.*, PageID# 137, 140.) She stated that up to eight professional expert opinions would establish the various medical and psychological diagnoses relevant to her claims. (*See id.*, PageID# 140.) She said she had "several professional experts to attest to the disabilities being a . . . direct result of the injury." (*See id.*, PageID# 141.)

On October 16, 2025, Ms. Kilgore filed an exhibit list, identifying (without attaching) four categories of exhibits: (1) "Revlon Box," (2) "[v]ital information collected from the plaintiff's medical diagnoses and treatments from visit summaries and progress notes," (3) "[p]hotos taken from the doctor's visits, which can be found in the progress notes dated 1/12/23[] and 1/20/23," and (4) "[p]hotos taken by the plaintiff on 2/7/23." (ECF No. 26.)

On the same day, Ms. Kilgore filed a document containing six photographs; she identified these as photographs she had taken of herself, and she included brief descriptions explaining the photographs. (ECF No. 27.)

7

On October 17, 2025, Ms. Kilgore filed a "response to denial of joinder and discovery extension," in which she asked the Court to reconsider the Court's October 7, 2025 Order. (ECF No. 29, PageID# 153.)

On October 20, 2025, Ms. Kilgore filed a "discovery trial brief and interrogatories" (ECF No. 30), which she described as a "discovery facts and evidence report" in support of her claims. (*Id.*, PageID# 156.) In the document, she again identifies her prospective witnesses. (*Id.*, PageID# 156–59). She includes what seem to be excerpts or summaries from various medical appointments related to the diagnosis and treatment of her injury, with photographs, and interspersed with what seem to be short narrative explanations of the treatment timeline and pre-suit communications with Revlon. (*See id.*, PageID# 159–64.) She includes a footnote citation seemingly to her own electronic patient chart. (*See id.*, PageID# 162.) She includes what seems to be an excerpt from or a draft expert report, which is neither dated nor signed. (*See id.*, PageID# 164–67.) Ms. Kilgore does not state whether she drafted this portion of the filing, or whether she is purporting that it was prepared by someone else, like one of her treating professionals or a retained expert. She then includes what seems to be witness outlines, explaining how she would seek to examine her prospective witnesses at trial. (*See id.*, PageID# 167–69.) She concludes the filing with a brief recitation and summary of her case, in the style of a trial brief summary. (*See id.*, PageID# 169–70.)

On November 7, 2025, the Court construed Ms. Kilgore's ECF No. 29 as a motion to reconsider, and denied it because "Plaintiff's Response (ECF No. 29) does not call attention to an argument or controlling authority that the Order overlooked or disregarded, presents no evidence or argument that could not previously have been submitted, and does not point out a manifest error of fact or law." (Non-document Order, Nov. 7, 2025.)

On November 10, 2024, Ms. Kilgore filed another witness list. (ECF No. 32.)

On November 12, 2024, Ms. Kilgore filed a document styled as "Pretrial Disclosures." (ECF No. 33.) She stated that Revlon had not served an expert report on her. (*Id.*, PageID# 174.) She then listed, without further explanation, certain records: Revlon's initial disclosures, "copies of the original claim department's investigation," and "[p]re-suit communication with the claims center." (*Id.*, PageID# 174–75.) She suggested that these documents show that Revlon had admitted liability with respect to both her and I.K. (*See generally* ECF No. 33.)

On November 24, 2024, Revlon filed its motion for summary judgment, attaching the declaration of a senior vice president at the company and three exhibits.[2] (ECF Nos. 34, 34-1.)

On November 30, 2024, Ms. Kilgore filed an exhibit—a photograph of what seems to be a series of questions and answers regarding the use of hair dye, with one question and one answer highlighted. (*See* ECF No. 35.) She provided no further context or explanation regarding the photograph.

On December 1, 2024, Ms. Kilgore filed a document she called "Exhibits." (ECF No. 36.) The document contains the same photograph as in ECF No. 35, along with what seems to be a photograph of a series of instructions for dyeing hair. (*Id.*) It is not clear where the instructions came from; the headers above the photograph say "Presented by AI" and "Copilot" (the name of a generative artificial intelligence tool). (*See id.*, PageID# 194.)

---

[2] On November 21, 2025, Ms. Kilgore, appearing pro se, filed a civil rights complaint against Revlon on behalf of I.K.  (*See* Case No. 1:25-CV-2544, Compl., ECF No. 1.) Judge Gaughan dismissed the complaint without prejudice in December 2025 because: (1) non-attorney parents cannot appear pro se on behalf of their minor child in lawsuits in federal court; and (2) the complaint failed to satisfy the Rule 8 pleading standard because it consisted only of "one brief, conclusory assertion, providing no facts upon which a court could find Defendants engaged in any wrong-doing." (*See* Case No. 1:25-CV-2544, Memorandum of Opinion and Order, ECF No. 3.) Courts may take judicial notice of public records, including dockets and proceedings in other courts. *See Boles v. Fisher*, No. 3:24 CV 786, 2024 WL 5247770, at *2 n.1 (N.D. Ohio Dec. 30, 2024); *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980).

On January 12, 2026, the Court issued an order noting that Ms. Kilgore's response in opposition to the motion for summary judgment was due on December 24, 2025, and that she had not yet filed a response. (Non-document Order, Jan. 12, 2026.) The Court extended the deadline for the response to February 2, 2026. (*Id.*)

On February 2, 2026, Ms. Kilgore filed a response in opposition to Revlon's summary judgment motion, attaching five photographs of dye boxes, dye bottles, and application instructions. (ECF Nos. 37, 37-1.) Revlon filed its reply brief in support of its motion on February 9, 2026. (ECF No. 38.)

On March 1, 2026, Ms. Kilgore re-filed her "pretrial disclosures" filing of November 12, 2024, calling it a "Consent Motion for disclosure discovery." (*See* ECF No. 39 & Docket Entry, Mar. 1, 2026.) The Court construed the filing as a request for the Court to compel the production of five categories of documents, and it denied the motion. (Non-document Order, Mar. 2, 2026.)

On March 16, 2026, Ms. Kilgore filed a document styled as a "Response to Defendant." (ECF No. 40.) The Court construes the filing as a sur-reply brief in opposition to summary judgment. The Court elects to consider the arguments raised in the filing. Ms. Kilgore writes that there are genuine issues for trial "because of the severity of the injury, and the undue treatment resulting from the manufacturer's wealth." (*Id.*, PageID# 222.) She writes that "the manufacturer's wealth and justifiable compensation . . . has caused unbearable intentional infliction of emotional distress . . . ." (*Id.*) She argues that she had adequately documented the severity of her injury, and she insisted that the product's warnings were inadequate because they only warned of an allergy to PPD when in reality "the product causes" staph infections and MERS. (*Id.*, PageID# 222–23.) She alleges that an allergy test led to the same reaction as she initially experienced, such that "the injuries would have occurred whether she had tested or not." (*Id.*, PageID# 223.)

This Memorandum Opinion and Order follows.

## III.     FACTUAL BACKGROUND

Based on the record currently before the Court, the material facts are not in genuine dispute. Revlon manufactures or sells, or both, hair color products in a product line called "ColorSilk." (*See* Gerber Decl. at 1, ECF No. 34-1, PageID# 186.) The ColorSilk product line includes a burgundy color product and a black color product, presumably among other color options. (*See id.*)

As of December 2022, these products were distributed and sold in boxes; these boxes also contained printed instructions and gloves. (*See id.* at 2, PageID# 187.)

On the outside of the box was the following warning:[3]

**IMPORTANT SAFETY WARNINGS**

⚠ **CAUTION:** THIS PRODUCT CONTAINS INGREDIENTS WHICH MAY CAUSE SKIN IRRITATION ON CERTAIN INDIVIDUALS AND A PRELIMINARY TEST ACCORDING TO ACCOMPANYING DIRECTIONS SHOULD FIRST BE MADE. . . .

**WARNING:** HAIR COLORANTS CAN CAUSE SEVERE ALLERGIC REACTIONS. READ AND FOLLOW INSTRUCTIONS. . . .

DO NOT COLOR YOUR HAIR IF:
- YOU HAVE A RASH ON YOUR FACE OR SENSITIVE, IRRITATED AND DAMAGED SCALP;
- YOU HAVE EVER EXPERIENCED ANY REACTION AFTER COLORING YOUR HAIR; . . .

WEAR SUITABLE GLOVES. RINSE HAIR WELL AFTER APPLICATION.

IF ANY IRRITATION OR REACTION OCCURS, DISCONTINUE USE IMMEDIATELY. . . .

BUY THE PRODUCT IN ADVANCE TO ALLOW FOR THE 48 HOURS ALLERGY TEST.

A SKIN ALLERGY TEST MUST BE COMPLETED 48 HOURS BEFORE YOU USE THIS PRODUCT, EVEN IF YOU HAVE USED COLORING PRODUCTS BEFORE.

---

[3] Ms. Gerber, vice president at Revlon, averred that she had personal knowledge that this was the warning printed on the boxes at the time Ms. Kilgore used these products. (Gerber Decl., ECF No. 34-1, PageID# 186.) A photograph of a ColorSilk box that Ms. Kilgore attached to her response brief also contains a warning, but it is slightly different than the one reproduced here. (*See* Exhibits, ECF No. 37-1, PageID# 211.) In addition to being organized slightly differently, the warning on the box in Ms. Kilgore's photograph states that hair colorants can cause severe allergic reactions "on certain individuals." (*Id.*) Any differences, in the Court's view, are not material to the resolution of this motion. But for clarity, the Court finds that Ms. Kilgore has not demonstrated a genuine dispute over the content of the warning that existed on the boxes of the actual products she used. She does not state—let alone aver—that the undated photographs she included in her exhibits were taken of the actual products she used (as opposed to, say, a product she bought more recently). Therefore, to the extent she would dispute Revlon's assertion, she has not met her production burden to affirmatively show, through proper evidence, that there is a genuine dispute on the issue. *See, e.g.*, *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (stating that "the party opposing the motion . . . may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion") (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

(Gerber Decl. at Ex. B, ECF No. 34-2, PageID# 188.)

Inside the box, in the enclosed instructions, this part of the warning was repeated:

 **CAUTION:** HAIR COLORANTS CAN CAUSE SEVERE ALLERGIC REACTIONS. READ AND FOLLOW INSTRUCTIONS. . . .

(*See* Gerber Decl. at Ex. C, ECF No. 34-3, PageID# 189.)

Immediately below that warning, the instructions list "SAFETY INSTRUCTIONS" and state that the instructions should be "READ BEFORE USE." (*Id.*) The instructions provide as follows, in relevant part:[4]

**SAFETY INSTRUCTIONS:**

IF DURING COLORING THE FOLLOWING OCCURS:

- ANY STINGING OR BURNING AND/OR RASH: RINSE HAIR IMMEDIATELY AND DISCONTINUE USE OF THE PRODUCT AS THIS MAY BE AN INDICATION OF MORE SERIOUS REACTION. HAIR SHOULD NOT BE COLORED AGAIN BEFORE CONSULTING A DOCTOR.

- RAPIDLY SPREADING SKIN RASH, DIZZINESS OR FAINTNESS, SHORTNESS OF BREATH AND/OR SWELLING TO EYES/FACE[:] RINSE HAIR IMMEDIATELY AND SEEK IMMEDIATE MEDICAL ATTENTION.

- IF AFTER COLORING OR IN THE FOLLOWING DAYS YOU EXPERIENCE PROBLEMS SUCH AS SKIN OR SCALP ITCHING, SKIN OR SCALP RASH, SWELLING TO EYES/FACE, BLISTERING AND/OR SKIN OR SCALP BURNING[:] SEEK IMMEDIATE MEDICAL ATTENTION. . . . AVOID UNNECESSARY SKIN CONTACT. . . .

- THE PREPARATION MAY CAUSE SERIOUS INFLAMMATION OF THE SKIN IN SOME PERSONS AND A PRELIMINARY TEST SHOULD ALWAYS BE

---

[4] The photograph of the safety and allergy test instructions that Ms. Kilgore attached to her response brief is too small and blurry to be completely legible. (*See* Exhibits, ECF No. 37-1, PageID# 213.) From what the Court can tell, while the overall layout of this section is the same as reproduced here, there may be slight differences between the two versions. For example, in Ms. Kilgore's photograph there seem to be six bullet points in the instructions for preparing the test mixture, whereas there are only four in the exhibit Revlon submitted. (Compare PageID# 213 with PageID# 189.) The Court cannot discern whether there are differences in the relevant warnings and safety and allergy test instructions reproduced here, but to the extent there are, the Court notes that Ms. Kilgore has not demonstrated a genuine dispute of material fact for the reasons stated in Footnote 3 of this opinion.

CARRIED OUT TO DETERMINE WHETHER OR NOT SPECIAL SENSITIVITY EXISTS.

**CAUTION:** THIS PRODUCT CONTAINS INGREDIENTS THAT MAY CAUSE SKIN IRRITATION ON CERTAIN INDIVIDUALS AND A PRELIMINARY TEST ACCORDING TO ACCOMPANYING DIRECTIONS SHOULD FIRST BE MADE. . . .

(*Id.*)

In the column next to these safety instructions is a set of instructions for carrying out the allergy test. (*Id.*) Users are instructed to prepare a small batch of the colorant–developer mixture and to then apply some of the mixture to the forearm.[5] (*Id.*) The user is then to let it dry and leave it applied for 45 minutes before washing it. (*Id.*) The instructions provide that if an adverse reaction occurs in the next 48 hours, the user should not proceed with coloring until they consult a doctor. (*Id.*)

Above these allergy-test instructions is another warning box, printed in smaller font than the rest of the page. (*See id.*) The box provides as follows:

---

[5] As discussed further above, Ms. Kilgore submitted an exhibit that seems to be a photograph of a series of instructions for dyeing hair, under headers indicating "Copilot" and "Presented by AI." (ECF No. 36, PageID# 194.) The instructions for the allergy test in the photograph state that a user should "[a]pply a small amount of the dye mixture **behind your ear** or on your inner arm." (*Id.*) (emphasis added). Here again, Ms. Kilgore has not met her burden of production to show a genuine dispute about the content of the allergy test instructions that were included in the boxes for the actual products she used. She does not describe—let alone provide sworn testimony regarding—where she found these instructions, who drafted them, when they were drafted, or any other context from which a reasonable factfinder could conclude that these originated from Revlon or, contrary to Ms. Gerber's declaration, were the instructions communicated to Ms. Kilgore at the time of her injury. Therefore, the undisputed evidence shows that the allergy test instructions were as summarized here.

|   **48**  HOURS BEFORE COLORING | **SKIN ALLERGY TEST** |
|---|---|
| | MUST BE DONE BEFORE EACH APPLICATION EVEN IF YOU HAVE ALREADY USED A HAIR COLORANT. THIS TEST REPRESENTS AN IMPORTANT PRECAUTION. HOWEVER, BE AWARE THAT EVEN IF AN ALLERGY ALERT TEST HAS BEEN CARRIED OUT YOU MAY STILL EXPERIENCE AN ALLERGIC REACTION WHEN YOU COLOR YOUR HAIR. THE ALLERGY ALERT TEST IS NOT A GUARANTEE OF AVOIDING FUTURE ALLERGIC REACTIONS. PLEASE CONSULT A DOCTOR IF YOU HAVE ANY DOUBTS. |

(*Id.*)

There may have been an additional allergy warning on the bottle of colorant itself.[6] The bottle of developer may have not included any additional warnings.[7]

Based on the pleadings in this matter and the briefing related to summary judgment, Revlon does not dispute—at this stage of the proceedings—that Ms. Kilgore used a Revlon ColorSilk burgundy color product on December 31, 2022. (*See, e.g.*, Compl., ECF No. 1-1, PageID# 8.) Revlon has not yet disputed Ms. Kilgore's allegations about the chain of events following that use.

Ms. Kilgore, for her part, does not dispute that she did not conduct an allergy test before using the product. (*See* Gerber Decl. at 2, PageID# 187; Gerber Decl. at Ex. D, ECF No. 34-4, PageID# 191 ("No.")). Indeed, she suggests that she did not read the enclosed instructions at all. (*See* Opp'n Br., ECF No. 37, PageID# 197 ("Even if the plaintiff had read the instructions and tested the product prior to applying hair dye, the unreasonable injury might have still occurred . . . .")). She had been coloring her hair for two years, "trusted the product and manufacturer," and

---

[6] Ms. Kilgore included an undated photograph of a ColorSilk bottle among her exhibits. (ECF No. 37-1, PageID# 212.) The bottle in the photograph has a warning printed on the label, stating that the product can cause an allergic reaction and contains ingredients that may cause skin irritation on certain individuals. (*Id.*) The warning instructs that a preliminary test according to the accompanying instructions should be performed before use. (*Id.*)

[7] Ms. Kilgore included an undated photograph of what could be a developer bottle among her exhibits. (ECF No. 37-1, PageID# 212.) She does not state, let alone aver, that this was the developer bottle in one of the products she used. But even assuming that additional warnings were not included on the developer bottle, Revlon would be entitled to summary judgment for the reasons stated below.

believed that she would be able to use the product for the rest of her life. (*See* Compl., ECF No. 1-1, PageID# 8.)

When Ms. Kilgore used the burgundy product on December 31, the product caused irritation to her scalp. (*Id.*) She immediately rinsed out the coloring mixture, and the irritation went away. (*See id.*)

At some point shortly thereafter, Ms. Kilgore used a black ColorSilk color product on her hair—again without performing an allergy test first. (*See id.*) Around two days later, Ms. Kilgore's scalp began to "itch all over." (*Id.*) She went a few days without washing her hair, but she washed her hair on January 11, 2023. (*Id.*; *see also* ECF No. 37, PageID# 196.)

On January 15, 2023, Ms. Kilgore noticed a lesion with pus behind her left ear and a "crusty and scaly circle" on her neck. (ECF No. 1-1, PageID# 8.) She attempted to treat the areas with over-the-counter antifungal medication. (*Id.*)

On January 23, 2023, Ms. Kilgore consulted with a nurse practitioner about the areas. (*Id.*) The NP took photographs, diagnosed a fungal infection, and prescribed an antifungal medication. (*Id.*; *see also* ECF No. 30, PageID# 159–60.)

On January 24, 2023, Ms. Kilgore applied a peroxide to the areas based on something she read on the Internet, and the infection grew worse. (ECF No. 1-1, PageID# 9.)

On January 25, 2023, Ms. Kilgore returned to the NP because her head, neck, and ear were "burning and itching." (*Id.*) The NP diagnosed impetigo and prescribed a topical antibiotic ointment. (*Id.*; *see also* ECF No. 30, PageID# 160.) Nevertheless, the infection grew worse and spread. (*Id.*)

On January 30, 2023, Ms. Kilgore returned to the doctor's office, where a different provider diagnosed her with a staph infection or methicillin-resistant Staphylococcus aureus (MRSA).[8] (*Id.*; *but see* ECF No. 30, PageID# 161–62.) Ms. Kilgore was referred to a dermatologist and was scheduled for an appointment for two weeks later. (*Id.*)

Sometime in those two weeks, Ms. Kilgore presented to a hospital emergency department, concerned that she had sepsis. (*Id.*) She did not. (*Id.*, PageID# 13.)

The dermatologist ultimately diagnosed Ms. Kilgore with contact dermatitis "from dyeing [her] hair." (ECF No. 1-1, PageID# 9; *see also* ECF No. 30, PageID# 162–63.) The dermatologist prescribed medication, and several weeks later the dermatitis had resolved. (*See id.*)

Ms. Kilgore thereafter made a claim with Revlon's claim department. (*See* ECF No. 30, PageID# 163.) In her pursuit of that claim, Ms. Kilgore filled out a "Cosmetovigilance Questionnaire." (*See* Gerber Decl. at 2, PageID# 187; Gerber Decl. at Ex. D, ECF No. 34-4, PageID# 191.) One of the questions on the form asked, "Did you perform an allergy test before the application?" (*Id.*) Ms. Kilgore checked, "No." (*Id.*)

Ms. Kilgore then consulted with an allergist, who diagnosed her with an allergy to p-Phenylenediamine (PPD). (*See* ECF No. 1-1, PageID# 9; ECF No. 30, PageID# 163.)

Having set forth the factual background relevant to the summary judgment motion, the Court turns to an analysis of the motion.

## IV.    LAW & ANALYSIS — SUMMARY JUDGMENT

Summary judgment shall be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed.

---

[8] Ms. Kilgore says that photographs were taken at these January 2023 appointments, which is presumably where the photographs filed at ECF No. 27 came from. Ms. Kilgore does not identify at which appointment the photographs were taken.

R. Civ. P. 56(a). The burden is on the moving party to conclusively show no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Lansing Dairy., Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). The moving party must either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* Fed. R. Civ. P. 56(c)(1)(A), (B). A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy, Inc.*, 39 F.3d at 1347.

The Court does not have the responsibility to search the record sua sponte for genuine issues of material fact. *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404–06 (6th Cir. 1992). The burden falls upon the nonmoving party to designate specific facts or evidence in dispute, and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Celotex*, 477 U.S. at 323. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of

law." *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251–52); *see also Tokmenko v. MetroHealth System*, 488 F. Supp.3d 571, 576 (N.D. Ohio 2020) ("If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. . . . In ruling on a defendant's motion for summary judgment, the judge's inquiry should be whether a reasonably-minded jury could return a verdict in favor of the plaintiff on the evidence presented.") (citing *Anderson*, 477 U.S. at 250, 252).

### A.  Identification of the Claims Asserted in the Complaint

Ms. Kilgore opens her opposition brief by identifying the causes of action she wishes to pursue in the case:

- Claims under the Ohio Product Liability Act for inadequate warning or instruction (Ohio Rev. Code § 2307.76), failure to conform to representations (*id.* § 2307.77), and design defect (*id.* § 2307.75).

- Disability discrimination, which she says she is pursuing under "U.S.C. 16301.1 & 16301.2."[9]

(Opp'n Br., ECF No. 37, PageID# 195–96.)

In the body of her brief, she states that this case "should be associated with" state, federal, and international "regulatory administrative violation cases." (*Id.*, PageID# 198.) She later argues that the ColorSilk products contain a manufacturing defect under Ohio Rev. Code § 2307.74. (*See* ECF No. 37, PageID# 199.) She then asserts that Revlon also committed intentional infliction of emotional distress under Ohio law. (*See id.*, PageID# 199–201.) She later calls this case "a matter of administrative law and regulations," stating that she is relying "on analysis of state/ federal laws and regulations, as well as stare decisis and precedent from previous judgments." (*Id.*, PageID# 203–04.)

---

[9] This may be a reference to the Americans with Disabilities Act (42 U.S.C. § 12101 *et seq.*) and its implementing regulations, which include 29 C.F.R. §§ 1630.1 and 1630.2.

As a threshold issue, it is necessary to clarify what the pleaded claims are in this case. Significantly, a plaintiff cannot expand her claims to assert new theories for the first time in response to a summary judgment motion. *Desparois v. Perrysburg Exempted Village School Dist.*, 455 F. App'x 659, 666 (6th Cir. 2012). Even considering the normally liberal pleading standard of Rule 8 of the Federal Rules of Civil Procedure, and after liberally construing Ms. Kilgore's complaint because she filed it pro se, the Cout concludes that the complaint cannot be reasonably construed to state claims for disability discrimination or intentional infliction of emotional distress, or any claim under state, federal, or international administrative law. Rather, the complaint only presents claims under the Ohio Product Liability Act.

The nature of the Rule 8 notice requirement is "more demanding at the summary judgment stage than at earlier stages of the litigation, because by this point a plaintiff has had the opportunity to conduct discovery and to amend the complaint to reflect new theories." *Desparois*, 455 F. App'x at 665.

Ms. Kilgore's complaint states that "[t]he product caused intentional injuries to the plaintiff." (ECF No. 1-1, PageID# 7.) And she arguably claimed that the injuries that she and her son suffered were disabling. (*E.g.*, *id.* at PageID# 25 ("permanent injury")).

But viewing the complaint as a whole, the Court finds that the language of the complaint did not give Revlon notice that it would have to defend against claims of disability discrimination, intentional infliction of emotional distress, or claims arising under statutes or administrative regulations outside of the Ohio Product Liability Act. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (holding that a defendant is entitled to be given "fair notice of what the . . . claim is and the grounds upon which it rests").

20

Therefore, Ms. Kilgore has not properly presented claims for disability discrimination or intentional infliction of emotional distress in this proceeding. The Court will thus proceed to consider whether Revlon is entitled to summary judgment on the only claims that have been properly presented: claims under the Ohio Product Liability Act for inadequate warning or instruction (Ohio Rev. Code § 2307.76), failure to conform to representations (*id.* § 2307.77), design defect (*id.* § 2307.75), and manufacturing defect (*id.* § 2307.73).

### B.        Claims Under the Ohio Products Liability Act

Under the Act, a manufacturer is liable for compensatory damages based on a product liability claim only if the plaintiff establishes all of the following:

> (1) Subject to division (B) of this section, the manufacturer's product in question was defective in manufacture or construction as described in section 2307.74 of the Revised Code, was defective in design or formulation as described in section 2307.75 of the Revised Code, was defective due to inadequate warning or instruction as described in section 2307.76 of the Revised Code, or was defective because it did not conform to a representation made by its manufacturer as described in section 2307.77 of the Revised Code;
>
> (2) A defective aspect of the manufacturer's product in question as described in division (A)(1) of this section was a proximate cause of harm for which the claimant seeks to recover compensatory damages;
>
> (3) The manufacturer designed, formulated, produced, constructed, created, assembled, or rebuilt the actual product that was the cause of harm for which the claimant seeks to recover compensatory damages.

Ohio Rev. Code § 2307.73(A).

The Act further provides that if a plaintiff is unable to establish by direct evidence that the manufacturer's product was defective, then, consistent with the Rules of Evidence, it is sufficient for the plaintiff to present circumstantial or other competent evidence that establishes that the product was defective in one of the four respects specified. *Id.* § 2307.73(B).

21

But proof that a manufacturer designed, formulated, produced, constructed, created, assembled, or rebuilt the type of product in question is not proof that the manufacturer designed, formulated, produced, constructed, created, assembled, or rebuilt the actual defective product in the product liability claim. *Id.* § 2307.73(C).

"In short, the plaintiff must show by a preponderance of the evidence that: (1) the product was defective; (2) the defective aspect of the product was the proximate cause of the injury; and (3) the defective product was actually manufactured by the defendant." *Yanovich v. Zimmer Austin, Inc.*, 255 F. App'x 957, 960 (6th Cir. 2007).

Revlon argues that Ms. Kilgore has no evidence that its ColorSilk products were defective in any way. (Mot., ECF No. 34, PageID# 177.) A party moving for summary judgment may satisfy its burden to show that there are no genuine issues of material fact simply "by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).

Revlon also argues that Ms. Kilgore's claims are barred by Section 2307.711(B)(2) of the Ohio Revised Code, which states that assumption of the risk is a complete bar to recovery under the Act. Specifically, if a plaintiff expressly or impliedly assumes a risk and that assumption of the risk was a direct and proximate cause of the harm for which the plaintiff seeks to recover damages, the plaintiff's assumption of the risk is a complete bar to the recovery of damages. Ohio Rev. Code § 2307.711(B)(2).

The Court will examine each alleged defect in turn.

### 1.     Manufacturing Defect

A product is defective in manufacture or construction if, when it left the control of its manufacturer, it deviated in a material way from the design

specifications, formula, or performance standards of the manufacturer, or from otherwise identical units manufactured to the same design specifications, formula, or performance standards. A product may be defective in manufacture or construction as described in this section even though its manufacturer exercised all possible care in its manufacture or construction.

Ohio Rev. Code § 2703.74.

Revlon points out that Ms. Kilgore, having had sufficient time for discovery, has no admissible evidence that the ColorSilk products that Ms. Kilgore used deviated in a material way from their design specifications when they left the manufacturer's control. (Mot., ECF No. 34, PageID# 181.)

The Court agrees. "In manufacturing defect cases, the plaintiff has the burden of proving the existence of the defect." *Cottrill v. Tricam Industries, Inc.*, No. 5:22-CV-00072-AMK, 2024 WL 1119288, at *10 (N.D. Ohio Mar. 14, 2024) (internal quotation marks omitted). Here, Ms. Kilgore has not produced any admissible evidence regarding the ColorSilk design specifications, formulas, or performance standards. She has not explained, let alone created a genuine issue of material fact regarding, how she believes the specific products she used deviated in a material way from Revlon's design specifications. She has further not identified any facts in evidence which support a finding that a manufacturing defect was the proximate cause of her alleged harm.

Because there is "no genuine issue as to any material fact" with regard to Ms. Kilgore's manufacturing defect claim, the Court finds that Revlon is entitled to judgment as a matter of law on that claim. Fed. R. Civ. P. 56(c).

### 2.    Design Defect

[A] product is defective in design or formulation if, at the time it left the control of its manufacturer, the foreseeable risks associated with its design or formulation . . . exceeded the benefits associated with that design or formulation . . . .

Ohio Rev. Code § 2307.75(A).

23

A product is not defective in design or formulation if a practical and technically feasible alternative design was not available that would have prevented the alleged harm without substantially impairing the usefulness or intended purpose of the product. Ohio Rev. Code § 2307.75(F).

Here, Revlon again points out that Ms. Kilgore has no admissible evidence regarding the design or formulas of the ColorSilk products she used.

The Court again agrees. As best as the Court can tell, Ms. Kilgore's theory of a design defect is that the ColorSilk products contained PPD, a chemical to which she is allergic. But she points to no admissible evidence supporting that these products contained PPD.

Ms. Kilgore alleges that she underwent an allergy test that showed that she was allergic to PPD, and she alleges that her dermatologist confirmed that the contact dermatitis was the result of using the ColorSilk products. She offers nothing by way of declaration, affidavit, document evidence, or other materials creating a genuine dispute as to these facts.

Moreover, her argument that an allergic reaction to the product would be evidence of a design defect is not well-taken. The mere fact that a product may or did cause injury does not mean that the product is defective based on its design. *See Thompson v. Sunbeam Products, Inc.*, No. 2:10–cv–98, 2011 WL 4502049, at *8 (S.D. Ohio Sept. 18, 2011) (citing *Bouher v. Aramark Services, Inc.*, 181 Ohio App.3d 599, 603 (Ohio Ct. App. 2009)).

Indeed, even if there was a genuine issue as to whether the products Ms. Kilgore used contained PPD and caused an allergic reaction, the Court agrees that expert evidence would have been necessary to establish that the inclusion of that chemical amounted to a design defect, as the original design of the product and the feasibility of alternative designs would be questions that are not within the knowledge of lay witnesses or members of the jury. *See, e.g.*, *Adkins v. Yamaha*

24

*Motor Corp., U.S.A.*, 17 N.E.3d 654, 661 (Ohio Ct. App. 2014); *cf. Moore v. P & G-Clariol, Inc.*, 781 F.Supp.2d 694, 706 (N.D. Ill. 2011) (finding, in a product liability suit, that the questions of whether a hair dye was unreasonably dangerous or caused the plaintiff's injuries was not within the knowledge of an ordinary person).

Because Ms. Kilgore failed to meet her reciprocal burden to point to fact and expert evidence showing a genuine dispute as to whether the ColorSilk products she used contained a design or formulation defect, Revlon is entitled to judgment as a matter of law on this claim. Fed. R. Civ. P. 56(c).

### 3. Inadequate Warning or Instruction

[A] product is defective due to inadequate warning or instruction if either of the following applies:

(1) It is defective due to inadequate warning or instruction at the time of marketing if, when it left the control of its manufacturer, both of the following applied:

    (a)    The manufacturer knew or, in the exercise of reasonable care, should have known about a risk that is associated with the product and that allegedly caused harm for which the claimant seeks to recover compensatory damages;

    (b)    The manufacturer failed to provide the warning or instruction that a manufacturer exercising reasonable care would have provided concerning that risk, in light of the likelihood that the product would cause harm of the type for which the claimant seeks to recover compensatory damages and in light of the likely seriousness of that harm.

(2) It is defective due to inadequate post-marketing warning or instruction if, at a relevant time after it left the control of its manufacturer, both of the following applied:

    (a)    The manufacturer knew or, in the exercise of reasonable care, should have known about a risk that is associated with the product and that allegedly caused harm for which the claimant seeks to recover compensatory damages;

(b)       The manufacturer failed to provide the post-marketing warning or instruction that a manufacturer exercising reasonable care would have provided concerning that risk, in light of the likelihood that the product would cause harm of the type for which the claimant seeks to recover compensatory damages and in light of the likely seriousness of that harm.

Ohio Rev. Code § 2307.75(A).

Here again, Revlon points out that Ms. Kilgore has no admissible evidence that its product warnings were defective. It presented evidence that the products Ms. Kilgore would have used contained warnings and instructions on the outside of the box and on included written instructions. (*See supra* at 12–15.) Among other things, these warnings stated that the product contained ingredients that may cause a severe allergic reaction, instructed that a user should perform an allergy test before use, instructed that a user should discontinue use if any irritation develops, and instructed users to seek prompt medical attention if there is a reaction. (*See id.*)

Revlon argues that its warnings were adequate. It also points out that Ms. Kilgore does not seem to dispute that she did not follow the enclosed instructions or complete an allergy test. (*See* Opp'n Br., ECF No. 37, PageID# 197 ("Even if the plaintiff had read the instructions and tested the product prior to applying hair dye, the unreasonable injury might have still occurred . . . .")).

Ms. Kilgore responds by pointing to pictures of a ColorSilk product box, instructions, and warnings on the product bottle itself. As discussed further above, where differences between her photographs and Revlon's exhibits can be identified, those differences are immaterial. She argues that the font size of the warnings was inadequate and that the warnings warn only of a severe allergic reaction, not of the possibility of a staph/MRSA infection or fatal reactions.

Critically, though, Ms. Kilgore does not dispute that she did not follow the instructions or conduct the required allergy test. She alleged in her complaint that she used a second ColorSilk

26

product after a first application had caused her skin to become irritated. She alleged that when she began to experience irritation, she did not rinse her hair or seek immediate medical attention.

The inadequacy of a warning cannot be the proximate cause of a plaintiff's injuries if the user of a product failed to read the warnings accompanying the product. *See Hisrich v. Volvo Cars of N. Am., Inc.*, 226 F.3d 445, 451 (6th Cir. 2000) (applying Ohio law). Even assuming that Revlon's warning was inadequate, then, Revlon could rebut the presumption of proximate cause that would arise from the inadequacy by showing that Ms. Kilgore did not read or follow the warning. *See, e.g.*, *Parker-Reed v. Primal Vantage Company, Inc.*, No. 2:19-cv-1745, 2021 WL 1193081, at *8 (S.D. Ohio Mar. 30, 2021).

Here, that fact is not seriously disputed. Ms. Kilgore has alleged—from her complaint through her summary judgment briefing—that she did not follow the instructions accompanying the product or conduct the required allergy test. She alleged in her complaint that she used a second ColorSilk product after a first application had caused her skin to become irritated, in direct contravention of the instructions. She alleged that when she began to experience irritation, she did not rinse her hair or seek immediate medical attention, again in contravention of the instructions.

Moreover, Ms. Kilgore has produced no admissible evidence to support that the injury would have occurred whether she read the warnings and followed the instructions or not. She claims that an allergist diagnosed her with a PPD allergy, that doctors diagnosed her with a staph or MRSA infection, and that doctors opined that the ColorSilk product was the cause of her injuries; but she does not include any medical records, affidavits, declarations, expert opinions, or other proper evidence to support those claims. She claims that the same injuries would have occurred even if she had read the instructions and performed the tests, again without any evidence.

27

The record includes what seems to be a draft of an expert report, but it is not dated or signed, and it is unclear whether the draft was written by an expert, Ms. Kilgore, or someone else.

In sum, Ms. Kilgore's response to Revlon's motion for summary judgment largely relies on her own bald assertions and arguments, which themselves are rambling and largely illegible. Under Rule 56, the nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must . . . do more than simply show that there is some metaphysical doubt as to the material facts. [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).

Here, on this record, the Court is convinced that no reasonable jury could return a verdict in Ms. Kilgore's favor on whether Revlon's warnings on its ColorSilk products were the proximate cause of her injuries. Accordingly, Revlon is entitled to judgment as a matter of law on this claim.

### 4. Failure to Conform

> A product is defective if it did not conform, when it left the control of its manufacturer, to a representation made by that manufacturer. A product may be defective because it did not conform to a representation even though its manufacturer did not act fraudulently, recklessly, or negligently in making the representation.

Ohio Rev. Code § 2307.77.

Here, Revlon again points out that Ms. Kilgore has no admissible evidence creating a genuine issue of material fact as to whether the ColorSilk products she used failed to conform to a representation.

28

And here again, the Court agrees. It is difficult to discern Ms. Kilgore's theory, but as best as the Court can tell, Ms. Kilgore conflates a failure to conform with a failure to warn. She writes, "The product failed to conform to representation when injuries could have been prevented through the representation of the product." (ECF No. 37, PageID# 208.) She further writes that the products "failed to conform to the representation and conformity because the manufacturer has a duty to warn and investigate foreseeable injuries, illnesses, and deaths related to the product." (*Id.*) And she writes that "the plaintiff depended on the representation to avoid FATAL outcomes, and the product is a direct proximate cause of the plaintiff's injuries." (*Id.*)

The Court understands Ms. Kilgore to mean that, by failing to warn that the ColorSilk products could lead to an allergic reaction with complications as serious as a staph infection or MRSA, Revlon made some kind of implied representation that its product could not cause those serious reactions.

But "representation" is defined in the statute as an "*express* representation of a material fact concerning the character, quality, or safety of a product." Ohio Rev. Code § 2307.71(A)(14) (emphasis added).

Ms. Kilgore has not presented any evidence that Revlon made an express representation regarding the ColorSilk products that those products then failed to conform to, let alone evidence that any such nonconformance led to her injuries. While Ms. Kilgore alleges that Revlon impliedly represented and warranted that its products were appropriate and safe to use (by continuing to sell them without stronger warnings), this is not the kind of representation that could support liability for failure to conform. *See Patterson v. Central Mills, Inc.*, 112 F.Supp.2d 681, 691 (N.D. Ohio 2000). Because there is "no genuine issue as to any material fact" with regard to Ms. Kilgore's

29

failure to conform defect claim, the Court finds that Revlon is entitled to judgment as a matter of law on that claim. Fed. R. Civ. P. 56(c).

### 5. Sufficient Opportunity for Discovery

The parties in this case had ten months to conduct fact and expert discovery. The Court finds that Ms. Kilgore had sufficient opportunity to conduct discovery, such that her failure to support essential elements of her claims with proper evidence is an adequate basis to grant summary judgment in Revlon's favor.

### 6. Assumption of the Risk

Because the Court agrees that Ms. Kilgore has no evidence supporting essential elements of her claims under the Ohio Product Liability Act, including with respect to whether the ColorSilk products were defective or whether any such defect was the proximate cause of her injury, the Court need not reach Revlon's argument regarding assumption of the risk.

### C. Conclusion

Viewing the evidence in the light most favorable to Ms. Kilgore, and drawing reasonable inferences in her favor, the Court finds that Revlon is entitled to summary judgment on the complaint.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS Revlon's motion for summary judgment (ECF No. 34.)

**IT IS SO ORDERED.**

*/s/ Jennifer Dowdell Armstrong*
JENNIFER DOWDELL ARMSTRONG
UNITED STATES MAGISTRATE JUDGE

Dated:  March 24, 2026

30